UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ] ] ] | Criminal No.  21-578 (01) |
| v. | ] ] | Judge Mehta |
| ZACHARY WILSON | ] ] |  |

**<u>SENTENCING MEMORANDUM</u>**

Defendant Zachary Miller, through undersigned counsel, respectfully submits the following memorandum in support of sentencing.  The defense requests that he receive probation.

Mr. Wilson pled guilty at the earliest opportunity to the misdemeanor count of parading, demonstrating, or picketing in a Capitol building.  40 USC § 5104(e)(2)(G).  This is one of the least serious offenses in the U.S. Code, with no applicable U.S. Sentencing Guidelines, the available option of probation, and a maximum sentence of incarceration of 6 months.

### *<u>I.  Sentencing Factors under 18 USC § 3553</u>*

The factors under 18 U.S.C. section 3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

1

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guidelines range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The factors below relate to the appropriate sentence of the Court given all considerations in sentencing.

### A.   *Full Acceptance of Responsibility*

By pleading guilty, Mr. Wilson has fully accepted responsibility for his actions, sparing the Court, government and witnesses the cost and time of trial and trial preparation.

Mr. Wilson has fully cooperated with the government. This further shows that he takes responsibility for his actions and is remorseful in pleading guilty. At the same time, his legal responsibility is limited by law to a misdemeanor, and he should be sentenced in that context.

### B. Early Acceptance of Responsibility

Mr. Wilson pled guilty to the charge at the earliest opportunity. In fact, Mr. Wilson coordinated with counsel to make arrangements for his wife to obtain counsel, and the two subsequently jointly entered a plea of guilty only <u>40 days</u> after Ms. Wilson's initial arrest. This is undoubtedly one of the quickest, if not the quickest, timelines from arrest to disposition. Clearly, Mr. Wilson took the charges very seriously.

The government has quoted a Facebook comment which Mr. Wilson on January 6 to indicate that he does not understand the seriousness of the offense. In fact, in determining sentencing consideration for remorse, the Courts and Guidelines consistently focus on the defendant's behavior <u>after</u> the initiation of the criminal case, rather than prior to a defendant's arrest. For example, under the U.S. Sentencing Guidelines (U.S.S.G.), sentencing level reductions for acceptance of responsibility apply to a defendant's action in pleading guilty after the initiation of the case. U.S.S. G. § 3E1.1. Defendants are not given a more punitive sentence under the U.S.S.G. if they do not indicate remorse prior to filing of the initial charges. Evidence of remorse after initiation of criminal charges is key. This makes sense, as it allows time for the defendant to reflect on the evidence, and his own conduct. This encourages reflection and review, and focuses on the defendant's actions after a defendant has availed himself of his constitutional right to counsel through the initiation of the prosecution of the case.

### C. Family History and Background

Mr. Wilson had a very tumultuous family history, as noted in the presentence report

3

(PSR).   Mr. Wilson faced very grim circumstances as a child and as a teenager, as described in the presentence report. ((PSR,  paragraphs 36-38.)  Despite this, he persevered to create a productive life as an adult, for himself and for his family.   He has been steadily employed, receives added responsibilities in his work, is a devoted father, and has been in a stable married relationship for 10 years.  A family member has written a letter in support, detailing Mr. Wilson's growth and contributions to his family.  Attached Exhibit A.   He is determined that his own children will not know the hardships and downright trauma that he has experienced.  In contrast to his own upbringing, Mr. Wilson provides a financially stable, loving and nurturing environment for his family.

### D.      *Physical and Mental Health*

Mr. Wilson has had very serious physical injuries on two separate occasions in his life (PSR, paragraph 43).   In response, he has made every effort to be physically fit, and regularly works out.

His childhood traumas have clearly had an impact on him – a fact he is very willing to acknowledge.  Mr. Wilson has attended classes and individual sessions to learn how to avoid the pitfalls of substance abuse and self-destruction.   He is determined to avoid the path he has seen other family members go down.

### E*.      Circumstances of the Case*

Mr. Wilson has absolutely no history of political extremism.   In fact, the decision to go to the District of Columbia was last minute, and he expected to be a rally called by the President of the United States.  He had never attended a political rally before January 6.  He

had absolutely no expectation or desire to overthrow the government. Rather, he was supporting the former President in what that President claimed were legitimate efforts to claim victory in the Presidential election. During the rally, itself, he responded to the President's call to "March to the Capitol…I'll march with you." He joined hundreds of people marching to the Capitol.

He fully acknowledges that he never should have illegally entered the Capitol. While he did not personally destroy anything, he illegally played a part in an unmanageable mob. But he was not attempting to overthrow the government at that point, either. Mr. Wilson certainly is at the lowest level of illegal activity. According to Ed Maguire, a criminologist at Arizona State University, security forces are trained to ignore yelled insults and small acts of hostility, like pushes and thrown water bottles. And they receive training in absorbing surges in a crowd, moving people as gently as possible, and quickly responding to pockets of violence and isolating agitators. Benedict Carey, <u>Making Sense of the 'Mob' Mentality</u>, New York Times (Jan. 12, 2021), available at https://www.nytimes.com/2021/01/12/science/crowds-mob-psychology.html. Mr. Wilson did not commit any of those actions.

On January 6 there was "[n]o clear structure in the crowd and absolute chaos on the police side: no clear sense of credible incident command, of wearing the right gear, carrying the right weapons. All of that seemed to be missing." <u>Id.</u> Importantly, as for persons in the mob: "With no apparent structure or strategy, the crowd had no shared goal or common plan." <u>Id</u>. Dr. James Jasper, a sociologist at City University of New York, noted, "Crowds do not act with one irrational mind… There are many groups, doing different things, for different

5

reasons." He further said, "There are great shots from the hall of statues, where protesters stayed inside the velvet ropes, like tourists, looking around sort of in awe." Id.

After Mr. Wilson was on the Capitol grounds, he illegally went through the gap in security to go inside the Capitol, but also exited the Capitol when directed to do so. Mr. Wilson's actions should be penalized in relation to his own lack of planning. While fully acknowledging that he illegally became a part of the mob, he was not there to overthrow the government, and is not charged as such. Given his role in the events of that day, a sentence of probation is appropriate.

Tragically, when Mr. Wilson was in a large crowd he decided to illegally follow the mob rather than make an individual decision to leave. His accession to the mob - becoming a part of something he would not have done individually, has subsequently caused havoc in his own life, through these charges. He has no record of committing such an act previously, and there is no reason to think he would ever follow a mob in the future.

### F.     The Impact of the Coronavirus Pandemic

The national emergency – entering its third year - has had a severe impact on the entire nation, but our nation's prisons and jails have been particularly susceptible to illness and death. Regardless of vaccination status, prisons are a cesspool for infectious disease.

In addition, this national emergency has hindered Mr. Wilson's case, including his ability to meet in person with counsel.

### G.     Sentencing Guidelines Range

The parties agree that the U.S. Sentencing Guidelines do not apply to this

misdemeanor conviction, with a maximum sentence of 6 months incarceration.

### H. Rehabilitation

Post-arrest rehabilitation is an important consideration in sentencing under 18 USC § 3553. The U.S. Supreme Court stated in Pepper v. United States, 562 U.S. 476, (2011)(hat a defendant's rehabilitation can be an important factor in sentencing under section 3553 in a number of ways: For example, evidence of rehabilitation:

> "...may also be pertinent to "the need for the sentence imposed" to serve the general purposes of sentencing set forth in § 3553(a)(2) --in particular, to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." §§ 3553(a)(2)(B)-(D); see McMannus, 496 F.3d, at 853 (Melloy, J., concurring) ("In assessing . . . deterrence, protection of the public, and rehabilitation, 18 U.S.C. § 3553(a)(2)(B)(C) & (D), there would seem to be no better evidence than a defendant's post-incarceration conduct"). Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to "impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in § 3553(a)(2)."
>
> Pepper, supra, at 491.

Since Mr. Wilson's arrest he has done everything possible to continue to provide for his family and have a positive impact in his community, while fully accepting responsibility for his actions on January 6.

Attached is a letter from his employer, Exhibit B. Importantly, Mr. Wilson has been a very responsible employee. He has rapidly advanced at his job, and worked many hours of overtime, as his wife lost her job after January 6. It is critical for Mr. Wilson, his family, and

the community that his sentence allow for him to maintain his job through a sentence of probation.

  I.  ***Just Punishment***

Particularly during this pandemic, it is best for the community, as well as Mr. Wilson, that he continue his rehabilitation in the community.  He has a conviction which, in and of itself, is quite punitive.  The conviction affects possible job opportunities, and will remain with him for the rest of his life.  But probation will allow him to continue to work, show remorse and to help support his family - both financially and emotionally.   If incarcerated, he would lose his job, and possibly his home, while wreaking havoc on his family.

Comparative sentences are addressed in Kelsey Wilson's sentencing memorandum.  Given sentences imposed in comparative cases, a sentence of probation is appropriate here.

Probation involves significant restraints on a defendant's liberty.  Defendants must periodically report to the probation officer, permit the officer to visit their homes and jobs at any time, and follow the officer's advice.  Jones v. Cunningham, 371 US 236, 242 (1963).  Defendants are admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live clean, honest, and temperate lives. *Ibid*.  Not only must they faithfully obey these restrictions and conditions, but they also live in constant fear that a single deviation, however slight, might result in being sent to prison. *Ibid*.

Defendants might be rearrested any time the probation officer only believes they have violated a term or condition of probation. *Ibid*.  They might have to serve all of the time that was suspended with few, if any, of the procedural safeguards that normally must be provided

to those charged with crime. *Ibid*. Probation significantly restrains defendants' liberty to do the things that free people in this country are entitled to do. *Ibid*.

## *II. Conclusion*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38,52 (2007) citing Koon v. United States, 518 U.S. 81, 113 (1996).

Mr. Wilson requests probation in this case, so that he can continue to work, provide financial and emotional support to her family, and be a productive member of society. Particularly given his early acceptance of responsibility, and the unique circumstances of the case, there is no reason to believe that he would commit this offense in the future. A sentence of probation is sufficient in this case to protect the public, afford just punishment, and provide for rehabilitation.

Respectfully submitted,

　　　/s/　　　　　
Joanne D. Slaight, #332866
400  7th Street, N.W.,  Suite 206
Washington, DC  20004
Phone (202) 256-8969
Email:  jslaight@att.net

9